OPINION OF THE COURT
Levine, J.
The principal issue on this appeal is whether, at the suppression hearing, the People sufficiently established probable cause for defendant’s warrantless arrest. The proof at the suppression hearing was as follows. The police received a report of a 911 call regarding a burglary in progress at 64-04 Wetherole Street, Queens County, from a next-door neighbor. Uniformed Officers Small and Lopez, on motor patrol, were dispatched to the scene. Lopez and Small were the only witnesses to testify at the suppression hearing. When they arrived at 64-04 Wetherole Street, they met another police unit already on the scene in response to a radio communication. One of the members of the other unit, an Officer Ianelle, informed Small and Lopez that the next-door neighbor, characterized by Ianelle as an “eyewitness”, gave him a detailed description of the perpetrator who had fled on a bicycle before the police arrived. Ianelle repeated the suspect’s description to Officers Small and Lopez.
Officers Small and Lopez began a canvass of the immediate area by driving to a thoroughfare two or three blocks away, and shortly thereafter spotted defendant, who fit the description they had been given. When they approached defendant with guns drawn, he fled on his bicycle. The police pursued him by car until he abandoned the bicycle, after which the chase continued on foot. During his flight, defendant abandoned a loaded revolver recovered later by the police. Defendant was eventually apprehended by the officers and found to have in his possession various stolen articles from the burglarized premises. The next-door neighbor was brought to the scene of defendant’s arrest and identified him as the burglar. *345 Defendant made certain incriminating admissions to Officers Small and Lopez.
After indictment, defendant moved to suppress the stolen property and gun the police recovered, his statement and the showup identification at the scene of his arrest, on the ground, inter alla, that the police lacked probable cause for the arrest. Supreme Court denied the motion in its entirety. Defendant then pleaded guilty to a reduced charge of attempted burglary in the first degree. On appeal to the Appellate Division, defendant’s principal argument was that probable cause was not established at the suppression hearing because of the People’s failure to produce as a witness Officer Ianelle, whose information was relied upon by Officers Small and Lopez in arresting defendant. The Appellate Division upheld Supreme Court’s denial of the motion to suppress (190 AD2d 872). In doing so, the Court relied upon our decision in People v Petralia (62 NY2d 47, cert denied 469 US 852). A Judge of this Court granted defendant leave to appeal, and we now reverse.
Defendant’s primary argument for reversal is that where (as here) the arresting officers had no knowledge of facts establishing probable cause but merely had a description of the perpetrator communicated to them (as the receiving officers) by another police officer of the same or another law enforcement agency (the sending officer), probable cause cannot be demonstrated at the suppression hearing consistent with the requirements of the Aguilar-Spinelli test (see, Spinelli v United States, 393 US 410; Aguilar v Texas, 378 US 108), without the testimony of the sending officer.
Defendant concedes that the foregoing position appears to be inconsistent with People v Petralia (supra), the case relied upon by the Appellate Division. In Petralia, this Court sustained the denial of a suppression motion although the only witness at the hearing was the receiving officer who made the arrest without any personal knowledge of the facts establishing probable cause. The basis of the arrest was a radio communication to the arresting officer from an undercover officer that the undercover had just purchased heroin from a specifically described suspect who drove off after the sale in a particularly described vehicle. We held in Petralia that the arresting officer’s testimony to that effect was sufficient. Defendant would limit Petralia to undercover investigations where secrecy of the sending officer’s identity is a concern, or to cases where the arresting officer is relying on the personal observations of a fellow officer in a common investigation.
*346 Our decision in People v Petralia should not be read in the limited manner defendant suggests, but proceeds from well-established principles of search and seizure law. First, when the subject of the suppression hearing is evidence which was the product of a warrantless arrest or seizure, the suppression court’s probable cause analysis is essentially "the same as that used by a magistrate in passing on an application for an arrest or search warrant” (People v Dodt, 61 NY2d 408, 415 [citations omitted]; see also, People v Petralia, 62 NY2d, at 52, supra). Therefore, rulings on the sufficiency of hearsay information to satisfy the requirements of the Aguilar-Spinelli test in warrant cases apply for determining whether hearsay information possessed by the police is sufficient to establish probable cause for a warrantless arrest (see, Jones v United States, 362 US 257, 270).
It also is axiomatic that, at a suppression hearing reviewing the validity of a warrantless arrest, the People are not obligated to produce any particular witness, provided they sustain their burden of coming forward with evidence showing that there was probable cause for the arrest (see, People v Petralia, 62 NY2d, at 52, supra). Indeed, there is no obligation on the prosecution to produce, or even disclose, the name of the third party whose information to the police provided probable cause for the arrest, so long as the requirements of the AguilarSpinelli test are met (see, McCray v Illinois, 386 US 300, 311; United States v Ventresca, 380 US 102, 108; 4 LaFave, Search and Seizure § 11.2 [d], at 245 [2d ed]). Case law also clearly establishes that probable cause can be established at the suppression hearing (or before the Magistrate on a warrant application) by hearsay information (see, Draper v United States, 358 US 307, 311-312; see also, United States v Ventresca, supra).
Thus, contrary to defendant’s argument here, People v Petralia (supra) does not merely represent an undercover officer exception for dispensing with the sending officer’s testimony at a suppression hearing. Rather, Petralia is a straightforward application of the principle that hearsay information, if compatible with the requirements of Aguilar-Spinelli, may establish probable cause, either to sustain a warrantless arrest or to support the issuance of a search or arrest warrant. In Petralia, the hearsay information satisfied both prongs of the Aguilar-Spinelli standard, i.e., the informant’s reliability and basis of knowledge (see, People v Bigelow, 66 NY2d 417, 423). The informant in Petralia, who was both the sending officer *347 and the undercover officer, had a basis of knowledge, since the information came from a drug purchase in which he personally participated. Moreover, as a police officer he was deemed to be a reliable informant (People v Petralia, 62 NY2d, at 52, supra; see also, United States v Ventresca, 380 US, at 111, supra; 2 LaFave, Search and Seizure § 3.5 [a], at 2-4 [2d ed]).
Nor can People v Petralia be limited as authorizing only a single level of hearsay information supplied by a fellow officer, defendant’s alternative suggestion. "Even hearsay-upon-hearsay may be utilized to show probable cause” (1 LaFave, Search and Seizure § 3.2 [d], at 580 [2d ed]). Indeed, the Supreme Court in Spinelli v United States (supra) recognized that the police agency’s hearsay information may validly be derived by its informant from sources other than firsthand observations, including the words of third persons. Thus, Justice Harlan, writing for the Spinelli majority, explained the deficiency in the warrant application regarding the FBI informant’s basis of knowledge in that case as follows: "We are not told how the FBI’s source received his information — it is not alleged that the informant personally observed Spinelli at work or that he ever placed a bet with him. Moreover, if the informant came by the information indirectly, he did not explain why his sources were reliable” (Spinelli v United States, 393 US 410, 416, supra [emphasis supplied]). And, Justice White, in concurring, expressly acknowledged that a police confidential informant’s source may also be hearsay information and yet satisfy the Aguilar-Spinelli test:
"If the affidavit rests on hearsay — an informant’s report — what is necessary under Aguilar is one of two things: the informant must declare either (1) that he has himself seen or perceived the fact or facts asserted; or (2) that his information is hearsay, but there is good reason for believing it” (id., at 425 [emphasis supplied]).
Relying on the foregoing pronouncements by the Supreme Court, numerous courts in various jurisdictions have sanctioned the use of hearsay-upon-hearsay to establish probable cause, providing the requirements of Aguilar-Spinelli were met. Thus, in United States v Spach (518 F2d 866) the United States Court of Appeals for the Seventh Circuit stated: "It is undisputed that hearsay may be used in affidavits supporting the issuance of search warrants * * * Appellant argues that long chains of hearsay are suspect * * * but the issue is not *348 the length of the chain but rather whether both prongs of the Aguilar test are met at each level” (id., at 869; see also, United States v McCoy, 478 F2d 176, 178-179 [10th Cir], cert denied 414 US 828; United States v Smith, 462 F2d 456, 459 [8th Cir]; Commonwealth v Musi, 486 Pa 102, 111-113, 404 A2d 378; State v Alderete, 88 NM 14, 15, 536 P2d 278 [Ct App]).
Defendant, however, reads People v Petralia (62 NY2d 47, supra), People v Havelka (45 NY2d 636) and People v Lypka (36 NY2d 210) as imposing an additional requirement in "receiving officer” cases: that the sending officer must appear at the suppression hearing when he lacked personal knowledge of the facts giving rise to probable cause. Though some courts have read our decisions that way (see, e.g., People v Ward, 95 AD2d 233), we clarify today that those cases do not impose such a special requirement and that admissibility of the evidence is governed solely by Aguilar-Spinelli. In Havelka, at the initial suppression hearing the only witness was the arresting officer. He merely testified that his desk sergeant, who was acting on hearsay information from a source at a named tavern, alerted him to the possibility that a motorcycle club might initiate a gun battle at the tavern. Obviously, the evidence at the suppression hearing failed to satisfy either prong of the Aguilar-Spinelli test, the reliability or the basis of knowledge of the desk sergeant’s informant. Indeed, from the evidence at a second suppression hearing that was conducted in Havelka, Aguilar-Spinelli would not have been satisfied even with the desk sergeant’s (i.e., sending officer’s) testimony, since the basis of knowledge of the actual police informant — the tavern bartender — "may well have been nothing more than unsubstantiated rumor” (45 NY2d, at 641, supra).
Nor is People v Lypka inconsistent with our holding here that double hearsay may be sufficient to establish probable cause. In People v Lypka (supra), the information the New York State and local police received from Pennsylvania law enforcement authorities clearly contained allegations sufficient to establish probable cause to arrest, i.e., that named and described suspects driving specifically described vehicles would be arriving at a particular New York State location in illegal possession of various firearms. But the arrest was invalidated because the sending Pennsylvania police officer related the foregoing facts constituting probable cause "[without disclosing the source of his information” (36 NY2d, at 212, *349 supra). Thus, because the People’s evidence at the suppression hearing consisted solely of the content of communications received from the Pennsylvania police, the basis of knowledge of the Pennsylvania law enforcement authorities was not established to satisfy that prong of the Aguilar-Spinelli test. "[B]are reliance on an unsubstantiated hearsay communication from the instigating officer or department will not suffice for probable cause” (id., at 214 [emphasis supplied]). Accordingly, we held in Lypka that the arrests were invalid because “there was no proof whatsoever [at the suppression hearing] that the Pennsylvania authorities possessed the necessary probable cause” (id., at 214).
Moreover, the foregoing interpretation of Havelka and Lypka is precisely the basis upon which we found those cases not controlling in People v Petralia (62 NY2d 47, 51-52, supra). Thus, in Petralia we distinguished Havelka and Lypka by saying that “the key factor in those cases is that the record did not indicate how the sending officer had acquired his information * * * In the case now before us, the arrest was not based on information from an unknown source of unknown reliability” (id., at 51). Accordingly, Havelka and Lypka fit well within the Aguilar-Spinelli framework, and do not stand for some separate mandate for the production of the sending officer at the suppression hearing in order to establish probable cause for a warrantless arrest.
It follows from the foregoing that it was not per se fatal to the establishment of probable cause for defendant’s arrest that the People did not call as a witness at the suppression hearing the sending officer, in this case Officer Ianelle, who gave the arresting officers the information leading to defendant’s arrest. The testimony of the arresting officers recounted the contents of the hearsay-upon-hearsay information they received from Officer Ianelle and from his source, the neighbor of the burglarized dwelling, who purportedly was an eyewitness. The sufficiency of that double hearsay information to validly establish probable cause for the arrest is dependent upon whether the evidence at the hearing regarding Ianelle’s informant and his source’s information satisfied the AguilarSpinelli standard.
Since it is readily inferable from the suppression hearing evidence that Officer Ianelle’s source was the neighbor who made the 911 call of the burglary and who was later brought to the site of the arrest to identify defendant as the perpetra *350 tor, the first prong of the Aguilar-Spinelli test, the reliability of the informant, was met. An identified citizen informant is presumed to be personally reliable (see, People v Hetrick, 80 NY2d 344, 349).
The People’s position founders, however, when scrutinized under the basis-of-knowledge prong of Aguilar-Spinelli. The only evidence adduced at the hearing to establish the next-door neighbor’s basis of knowledge was, first, a description of the content of the 911 call between him and the police, and then the arresting officers’ account of their conversation with Officer Ianelle at the crime scene. The testimony regarding the contents of the 911 call was sketchy at best. At that point, the neighbor and his wife apparently had not seen who entered the burglarized premises, stating only their belief that someone was inside and had left a bicycle in front of the premises. The most detailed testimony regarding the arresting officers’ conversation with Officer Ianelle came from Officer Small. According to Small, Officer Ianelle stated that he had just interviewed an "eyewitness”, the "next door neighbor”, who gave him a detailed description of the perpetrator which Ianelle then repeated to him and Officer Lopez.
Absent from the foregoing narratives of conversations with the next-door neighbor of the dwelling at 64-04 Wetherole Street was any exposition of the factual basis for the neighbor’s belief that the person whose physical appearance he described had burglarized the premises — whether that belief resulted from personal observation of him actually entering or leaving the premises, or otherwise. Moreover, the testimonial account of the neighbor’s statements lacked any detailed description by the neighbor of the suspect’s movements entering or leaving the premises, from which it might be inferred that the neighbor’s assertion that a burglary had taken place was based upon personal observation. Thus, the suppression court was relegated to reliance upon Officer Ianelle’s conclusory characterization of the neighbor/informant as an "eyewitness”, in order to determine the reliability of the information claimed to have established probable cause. This, however, is precisely what the Aguilar-Spinelli standard was designed to avoid (see, Spinelli v United States, 393 US 410, 413, 419, supra; Aguilar v Texas, 378 US 108, 111-113, supra; see also, People v Bigelow, 66 NY2d 417, 424, supra; People v Mullins, 137 AD2d 227, 231, lv denied 72 NY2d 922).
Finally, the People may not rely upon their alternative *351 theory to demonstrate that the police had probable cause, i.e., that the police had reasonable suspicion to stop defendant on the street on the basis of Ianelle’s description of his appearance, which then escalated to probable cause when defendant fled and abandoned his gun. That theory was never advanced before the suppression court and, therefore, may not be considered here (People v Johnson, 64 NY2d 617, 619, n 2; People v Dodt, 61 NY2d 408, 416, supra).
Accordingly, the order should be reversed, defendant’s motion to suppress granted and the case remitted to Supreme Court, Queens County, for further proceedings on the indictment.